**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

TREY BROWN,

        Plaintiff,

v.                                            Case No. 6:12-cv-1299-Orl-37GJK

SHERIFF OF ORANGE COUNTY,
FLORIDA; COURDNEY RAMSAROOP;
and HECTOR AVILEZ,

        Defendants.

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's Motion for Summary Judgment as to Defendant Courdney Ramsaroop (Doc. 25), filed December 13, 2013;

2. Plaintiff's Motion for Summary Judgment as to Defendant Hector Avilez (Doc. 26), filed December 13, 2013;

3. Defendant Hector Avilez's Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 32), filed January 10, 2014;

4. Defendant Hector Avilez's Motion for Summary Judgment (Doc. 38), filed January 24, 2014;

5. Defendant, Sheriff Jerry L. Demings' Motion for Summary Judgment and Memorandum of Law in Support (Doc. 39), filed January 24, 2014;

6. Motion to Exclude Report and Testimony of Charles Drago and Incorporated Memorandum of Law (Doc. 40), filed January 24, 2014;

7. Plaintiff's Response in Opposition to Motion for Summary Judgment by

Defendant Hector Avilez (Doc. 42), filed February 3, 2014;

8. Response to Defendant Jerry Demings' Motion to Exclude Report and Testimony of Charles Drago and Incorporated Memorandum of Law (Doc. 43), filed February 7, 2014; and

9. Plaintiff's Response to Defendant, Sheriff Jerry L. Demings' Motion for Summary Judgment and Memorandum of Law in Support (Doc. 48), filed February 24, 2014.

Upon consideration, the Court finds that: (1) Plaintiff's motion for summary judgment as to Defendant Ramsaroop (Doc. 25) is due to be granted; (2) Plaintiff's motion for summary judgment as to Defendant Avilez (Doc. 26) is due to be denied; (3) Defendant Avilez's motion for summary judgment (Doc. 38) is due to be denied; (4) the Sheriff's motion for summary judgment (Doc. 39) is due to be granted; and (5) the Sheriff's motion to exclude the report and testimony of Charles Drago (Doc. 40) is due to be denied as moot.

## BACKGROUND[1]

On May 3, 2009, at approximately 9:30 p.m., Deputy Hector Avilez was patrolling a south Orlando neighborhood when he received a call for help on his radio; three suspects dressed in black were fleeing from another deputy, and an Orange County Sheriff's Office ("OCSO") helicopter had just located them hiding in the backyard of a nearby house. (*See* Doc. 28-3, p. 6; Doc. 27-3, p. 2; Doc. 27-4, p. 2.) Avilez responded and drove to the house, arriving in time to see the suspects abandon their hiding place

---

[1] The following facts are constructed from the parties' briefings and supporting evidence and are set forth only for the purpose of resolving the parties' pending motions. They do not constitute findings of fact made by the Court, and the facts adduced at trial may differ from the facts set forth in this Order.

2

and run toward a walled apartment complex across the street. (Doc. 28-3, p. 6.) Avilez pursued the suspects on foot, and when they jumped over the complex's wall and fled inside, Avilez climbed in after them. (*Id.*)

When he landed inside the complex, Avilez looked up and saw a "shadow" running away from him. (*See id.*) Assuming it to be one of the darkly dressed suspects, Avilez followed. (*Id.*) The "shadow" turned out to be Plaintiff Trey Brown, who avers that he had been returning from a trip to a convenience store when he heard the commotion in the nearby neighborhood and decided to run home, cutting through the apartment complex on his way. (Doc. 27-1, pp. 23–24, 55–58.)

The bulk of the ensuing chase was captured on video by the OCSO helicopter's forward-looking infrared camera. (*See* Doc. 28, Ex. G, 5:30–52.) The footage depicts Plaintiff and Avilez progressing through the complex, with Avilez rapidly gaining ground. (*Id.* at 5:30–42.) As they reach a grassy patch between two buildings, Plaintiff slows, raises his hands in the air, and lies down face-first on the ground. (*Id.* at 5:43.) Avilez, who was following close behind, runs over Plaintiff, stepping on Plaintiff's back as he passes. (*Id.* at 5:48.) Avilez comes to a halt a few steps past Plaintiff and then cuts back. (*Id.*) When he reaches Plaintiff a second time, Avilez kicks downward and strikes Plaintiff in the head. (*Id.* at 5:50.)

The parties dispute the circumstances surrounding the blow to Plaintiff's head. According to Avilez, at the time of the strike, Plaintiff was disobeying commands to show his hands and had begun to get up. (Doc. 28-3, p. 7.) Avilez claims that he therefore attempted to step on Plaintiff's back and pin him to the ground, but, in the darkened apartment complex, he inadvertently connected with Plaintiff's head instead of his back.

(*Id.* at 7–8.) Plaintiff, on the other hand, maintains that the area was at least partially illuminated (Doc. 27-3, p. 6) and that he was not ignoring Avilez's commands, attempting to get up, or otherwise resisting arrest when Avilez kicked him in the head.[2] (*See* Doc. 27-1, pp. 24–26, 58–59.)

Either way, after Avilez struck Plaintiff the second time, he trained his gun on Plaintiff and repositioned his foot to Plaintiff's back, securing him until backup arrived. (*See* Doc. 28, Ex. G, 5:52.) Within a few moments, another deputy caught up to Avilez, and together they placed Plaintiff in handcuffs. (*Id.* at 6:04.)

By the time Deputy Courdney Ramsaroop arrived, the scene had de-escalated. Plaintiff was sitting compliantly on the ground with his legs outstretched and his hands cuffed behind his back. (*See* Doc. 27-3, p. 10.) Nevertheless, when Ramsaroop saw Plaintiff, he jumped on top of him, grabbed him by the collar, and began shaking him back and forth "pretty hard" while asking, "Where's your friend at?" (Doc. 27-1, pp. 26–27; Doc. 27-2, ¶ 2; Doc. 27-3, pp. 10–11; Doc. 27-4, p. 3.) When Plaintiff insisted that he did not know, Ramsaroop drew his gun, placed it to Plaintiff's neck, and threatened to shoot if Plaintiff did not answer. (Doc. 27-1, pp. 26–27.) Plaintiff fell silent, and Ramsaroop began counting down from five. (*See id.* at 27; Doc. 28-1, p. 4.) When he reached zero and Plaintiff still had not responded, Ramsaroop released Plaintiff, got up, and left the area. (Doc. 27-1, p. 27.)

---

[2] The helicopter footage does not conclusively confirm or contradict either of these factual constructions. (*See* Doc. 28, Ex. G, 5:49.) It does not contain audio of the parties' exchange and thus cannot corroborate Avilez's assertion that Plaintiff was ignoring his commands. (*See id.*) Additionally, because the video was shot in night-vision and from an oblique angle overhead, the Court cannot discern from it how dark the complex was at the time of the arrest or whether, from Avilez's perspective, Plaintiff appeared to be getting up off of the ground. (*See id.*)

Shortly thereafter, the deputies escorted Plaintiff—who was still in handcuffs—to a patrol car, where he again encountered Ramsaroop. (*See* Doc. 27-1, p. 30; Doc. 27-3, p. 15.) This time, when Ramsaroop saw Plaintiff, he pressed Plaintiff against the car, gripped him by the arm, and asked, "What's the capital of Thailand?" (*See* Doc. 27-1, p. 31; Doc. 27-3, pp. 13, 15; Doc. 27-4, pp. 3–4.) Plaintiff responded that he did not know. (*Id.*) Ramsaroop then said, "[I]f you don't tell me, I'm going to show you." (Doc. 27-1, p. 31.) When Plaintiff again replied that he did not know, Ramsaroop punched him in the groin, causing Plaintiff to crumple to the ground. (*See id.*; *see also* Doc. 27-4, p. 4.)

Plaintiff subsequently brought this 42 U.S.C. § 1983 excessive force action against Avilez and Ramsaroop in their individual capacities and against the Sheriff of Orange County in his official capacity. (Doc. 1, ¶¶ 12–22.) Plaintiff now moves for summary judgment on his claims against the individual Defendants. (Docs. 25, 26.) Ramsaroop did not respond, but Avilez opposes and cross-moves for summary judgment on qualified immunity grounds. (Docs. 32, 38.) The Sheriff also moves for summary judgment on Plaintiff's official-capacity claims and moves to exclude the testimony of Plaintiff's expert witness. (Docs. 39, 40.) This matter is now ripe for the Court's adjudication.

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality of the facts depends on the substantive law applicable to the case. *See id.* To defeat a motion for summary

judgment, the non-moving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant, *see Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), but may disregard assertions of fact that are "blatantly contradicted" by record evidence, such as video footage, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Cross motions for summary judgment do not change the standard." *Perez-Santiago v. Volusia Cnty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010) (citation and internal quotation marks omitted); *see also Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Santiago*, 2010 WL 917872, at *2 (citations and internal quotation marks omitted). When considering cross-motions for summary judgment, the Court must "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citations omitted).

## DISCUSSION

### I.  Avilez's Motion for Summary Judgment

Avilez moves for summary judgment on the ground that he is entitled to qualified immunity from Plaintiff's excessive force claims. (Doc. 38.) Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*; *see also Terrell v. Smith*, 668 F.2d 1244, 1250 (11th Cir. 2012). To do so, the plaintiff must make a two-part showing: First, he must demonstrate that the facts of the case make out a violation of a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, he must demonstrate that the constitutional right was "clearly established" at the time of the putative misconduct.[3] *Id.* "This inquiry is undertaken in light of the specific context of the case, not as a broad general proposition." *Terrell*, 668 F.3d at 1250 (citation and internal quotation marks omitted). "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). This construction "eliminates all issues of fact" such that "the court has the plaintiff's best case before it." *Id.*

Here, it is undisputed that Avilez was acting within his discretionary authority at all relevant times. (*See* Doc. 38, p. 4; Doc. 42.) Thus, the burden shifts to Plaintiff to show that Avilez violated a constitutional right that was clearly established at the time of

---

[3] The Court may address the prongs of the qualified immunity inquiry in any order, although the U.S. Supreme Court encourages courts to address the constitutional violation prong first so as to develop a body of clearly established law on the often fact-specific inquiries that arise in the context of § 1983 claims. *See Pearson*, 555 U.S. at 232.

7

Plaintiff's arrest. *See Terrell*, 668 F.2d at 1250; *see also Plumhoff v. Rickard*, 2014 WL 2178335, at *9 (2014).

To establish the violation of a constitutional right, Plaintiff avers that Avilez violated his Fourth Amendment right to be free from the use of excessive force in the course of an arrest. (*See* Doc. 42, p. 4 (citing *Lee*, 284 F.3d at 1197 ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.")).) Excessive force claims in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard, which balances the severity of the force used by an officer against the need for the use of force. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The need for force is determined based on the totality of the circumstances presented to the officer, with particular attention paid to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Specifically, Plaintiff contends that Avilez applied excessive force when he stepped on Plaintiff's back and kicked him in the head after he had already surrendered and was lying prostrate on the ground. (*See* Doc. 42, pp. 4–10.) Those strikes, Plaintiff argues, were plainly disproportionate to the force needed to effectuate his arrest and were therefore objectively unreasonable. (*Id.*) Constructing the facts in the light most favorable to Plaintiff for the purpose of Avilez's motion, the Court agrees, particularly because of the second contact—Avilez's kick to Plaintiff's head. At the time of the strike, Plaintiff had

abandoned his prior attempt to flee and lay on the ground, passively surrendering. Under these circumstances, Plaintiff posed no discernable threat to Avilez and, at best, posed a minimal risk of resuming flight. Yet despite Plaintiff's nonresistance, Avilez kicked him in the head. On this version of the events, the Court finds that Avilez's actions were objectively unreasonable and therefore violated Plantiff's Fourth Amendment right to be free from excessive force during the course of an arrest.

Avilez counters that his actions were in fact reasonable because, under the *Graham* factors, the circumstances surrounding Plaintiff's arrest presented a heightened need for force: Plaintiff was a suspected participant in a violent assault[4] who had initially fled from the deputies, and thus the crime at issue was severe, the suspect was potentially dangerous, and he had shown a propensity for attempting to evade arrest. (*See* Doc. 38, pp. 7–9.) This argument, however, imputes knowledge to Avilez that he did not have at the time of the arrest. Contrary to the position that he takes in his motion, Avilez conceded during his deposition that at the time of Plaintiff's arrest, he did not have any information about the type of crime that Plaintiff was suspected of committing; he simply responded to a radio message stating, "Foot pursuit, deputies in need of assistance." (*See* Doc. 28-3, pp. 6–7.) Thus, the first *Graham* factor—"the severity of the crime at issue"—does not weigh in favor of a heightened need for force. *See Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (indicating that, where the crime at issue is "unknown and unclear" to the arresting officer, the first *Graham* factor does not support the application of severe force).

---

[4] Defendants have not argued that Plaintiff was actually involved in the crime to which the deputies initially responded; they contend only that Avilez thought he was one of the suspects identified by the OCSO helicopter. (*See* Docs. 32, 38, 39.) Plaintiff denies involvement in any assault occurring earlier that evening. (*See* Doc. 27-1, p. 58.)

With respect to the second two *Graham* factors, the suspect must pose an "*immediate* threat to the safety of the officer or others" or must be "*actively* resisting arrest or attempting to evade arrest by flight" to permit the use of severe force. 490 U.S. at 396 (emphasis added). On Plaintiff's best version of the facts, he posed no immediate threat nor engaged in any active resistance. Accordingly, contrary to Avilez's argument, the *Graham* factors support the Court's conclusion that Avilez's use of force was objectively unreasonable under the circumstances.

Avilez alternatively argues that Plaintiff sustained only de minimis injuries from the arrest, and thus any force used during the course of the arrest must have been likewise de minimis. (*See* Doc. 38, pp. 9–13 (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (observing that the Eleventh Circuit "has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment")).) The Court disagrees. In *Lee*, the U.S. Court of Appeals for the Eleventh Circuit squarely rejected the argument that a de minimis injury automatically indicates that de minimis force was used to inflict it, reasoning:

> Just as ordinary, reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time, objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm.

284 F.3d at 1200 (citations and internal quotation marks omitted) (holding that "[s]lamming the head of a handcuffed, subdued arrestee against the trunk of a car [was] objectively unreasonable and clearly unlawful," despite the fact that the arrestee sustained only minor injuries). As addressed above, the Court finds for the purpose of Avilez's motion that the force he applied to Plaintiff was objectively unreasonable under

the circumstances. That Plaintiff may have fortuitously escaped more serious injury does not render the otherwise unlawful force objectively reasonable.[5]

Having determined, then, for the purpose of this motion, that Avilez violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure when he struck Plaintiff in the head after he had already surrendered, the remaining question is whether the state of the law at the time of the arrest would have clearly established that such a strike was unlawful.

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations and internal quotation marks omitted). Controlling, materially similar case law can provide clearly established law, as can precedent that establishes a broader constitutional principle that is clearly applicable to the facts of the present case. *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013).

A review of the Eleventh Circuit's pertinent case law convinces the Court that a reasonable officer in Avilez's position would have been on notice that a strike to Plaintiff's head under the circumstances would constitute excessive force. *Smith v. Mattox*, for example, is factually similar to the case at hand and establishes that applying gratuitous force to a nonresistant suspect after he has surrendered is objectively unreasonable

---

[5] In any event, the Court is not prepared to determine on the record before it that Plaintiff's injuries were necessarily de minimis. Plaintiff contends, *inter alia*, that he suffers from debilitating migraines that were not present before the blow to his head. (*See* Doc. 28-1, ¶¶ 6–7, 13.)

under the Fourth Amendment. *See* 127 F.3d at 1418–20. In *Smith*, a police officer, responding to a tip that three individuals had been seen with cocaine at the plaintiff's mother's house, confronted the plaintiff while he was eating lunch in the front yard. *See* 127 F.3d at 1417–18. Like Plaintiff in this case, the plaintiff in *Smith* initially fled into the surrounding neighborhood. *Id.* at 1418. Eventually, however, he returned and, "[a]fter first pretending to run again, [the plaintiff] docilely submitted to arrest upon [the officer's] request for him to 'get down.'" *Id.* The officer then approached the plaintiff, put his knee on the plaintiff's back and, despite the plaintiff's protestations, broke his arm "with a grunt and a blow." *Id.* In the excessive force case that followed, the Eleventh Circuit denied the officer qualified immunity in spite of his argument that the plaintiff's previous resistance justified heightened force. *See id.* at 1419–20. In so holding, the court emphasized that the officer's actions were "obviously unnecessary to restrain even a previously fractious arrestee." *Id.* at 1420.

In addition to *Smith*, several Eleventh Circuit cases decided in the decade preceding Plaintiff's arrest establish the broad constitutional principle that applying severe force to a suspect who has surrendered and no longer poses a threat is objectively unreasonable under *Graham*. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1333–34 (11th Cir. 2008) ("Applying 'the excessive force standard would inevitably lead every reasonable officer . . . to conclude that the force' used here—punching a non-resisting criminal suspect for no apparent reason other than malice—is not protected by our constitution."); *cf. Lee*, 284 F.3d at 1199 (finding that striking an arrestee after she had been fully secured was "wholly unnecessary to any legitimate law enforcement purpose"); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (denying qualified immunity to

officers who purportedly beat a nonresisting, handcuffed suspect); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity to an officer who commanded his dog to attack a suspect after the suspect had surrendered and laid down on the ground).[6] Accordingly, based on *Smith* and the precedent cited above, the Court finds that the law clearly established at the time of Plaintiff's arrest that the type of force Avilez used during Plaintiff's arrest—construed in the light most favorable to Plaintiff—was objectively unreasonable under the Fourth Amendment.

In sum, the Court finds that under the version of the facts most favorable to Plaintiff, Avilez violated Plaintiff's clearly established Fourth Amendment right to be free from the use of excessive force during the course of an arrest when he struck Plaintiff after Plaintiff had already surrendered. Accordingly, qualified immunity is inappropriate in this case, and Avilez's motion for summary judgment (Doc. 38) is due to be denied.

## II. Plaintiff's Motion for Summary Judgment as to Avilez

Shifting perspective, the Court turns to Plaintiff's motion for summary judgment on his claims against Avilez. Here again, Plaintiff argues that Avilez's strikes to his back and head violated his Fourth Amendment right to be free from unreasonable seizure.[7] (*See*

---

[6] The Court recognizes that some of these cases involve suspects who, unlike Plaintiff, were already handcuffed when an officer purportedly applied excessive force. *See Lee*, 284 F.3d at 1191; *Slicker*, 215 F.3d at 1227; *Hadley*, 526 F.3d at 1327. While this factual distinction may be significant enough to preclude these cases from constituting clearly established law on their own (like *Smith*), the cases remain relevant to the broader applicable principle that, when a suspect's potential danger and risk of flight have vitiated, an officer's continued use of needlessly severe force is objectively unreasonable under the Fourth Amendment.

[7] Plaintiff also contends that Avilez applied excessive force by placing a gun to Plaintiff's head and threatening him. (*See* Doc. 26, pp. 5–6.) The evidence that Plaintiff provides for this proposition, however, plainly refers to Ramsaroop and is therefore inapposite to Plaintiff's claims against Avilez. (*See, e.g.*, Doc. 27-1, p. 26 ("Officer Ramsaroop is the one who put the gun to my head . . .").) Additionally, helicopter footage

Doc. 26, p. 4.) For the purpose of Plaintiff's motion, however, the Court resolves factual disputes in Avilez's favor and construes the evidence and any reasonable inferences drawn therefrom in the light most favorable to him. *See Battle*, 468 F.3d at 759.

Under this factual construction, Plaintiff was disregarding the deputy's commands and attempting to resume flight when Avilez inadvertently kicked him in the head in the dim light. (*See* Doc. 28-3, pp. 6–8.) This version of the facts tips two of the *Graham* reasonableness factors in Avilez's favor—the suspect's threat to officer safety and his resistance to arrest. *See* 490 U.S. at 396. As such, the Court cannot say that no reasonable jury could return a verdict for Avilez, and thus genuine issues of material fact preclude granting Plaintiff's motion. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248. Plaintiff's motion for summary judgment as to Avilez (Doc. 26) is therefore due to be denied. Accordingly, as Plaintiff's and Avilez's cross-motions for summary judgment are due to be denied, Plainiff's claims against Avilez will proceed to trial.

### III.     Plaintiff's Motion for Summary Judgment as to Ramsaroop

Plaintiff additionally moves for summary judgment on his claim that Ramsaroop used excessive force during the course of his arrest. (*See* Doc. 25.) In spite of a Court Order directing him to do so (*see* Doc. 49), Ramsaroop has not responded to Plaintiff's motion. Accordingly, the Court deems Plaintiff's motion unopposed.

Where a party fails to respond to an opponent's assertion of fact on summary judgment, the Court may "consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials—including the facts

---

depicts Avilez pointing a gun at Plaintiff only while he awaited backup after he had pinned Plaintiff to the ground, a period lasting approximately ten seconds. (*See* Doc. 28, Ex. G, 5:52–6:02.)

considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3); *see also Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988).

As a threshold matter, Plaintiff's motion focuses almost entirely on liability, addressing damages only to contend that he suffered more than de minimis injuries. (*See* Doc. 25, p. 9.) The Court therefore construes Plaintiff's motion as one for partial summary judgment on the issue of liability, leaving damages to be determined at trial. *See* Fed. R. Civ. P. 56(a) (permitting entry of summary judgment on part of a party's claim).

Turning to the merits, Plaintiff has provided ample, uncontroverted evidence that after he was handcuffed and fully subdued, Ramsaroop: (1) jumped on him and shook him violently back and forth; (2) placed a gun to Plaintiff's neck and threatened to kill him; and (3) stood Plaintiff up against a patrol car and punched him in the groin. (*See* Doc. 27-1, pp. 26–27, 30–33; Doc. 27-2, ¶ 2; Doc 27-3, pp. 10–15; Doc. 27-4, pp. 3–4; Doc. 28-1, p. 4.) Each of those actions amounts to an objectively unreasonable application of force unjustified by any legitimate law enforcement purpose. *See, e.g.*, *Lee*, 284 F.3d at 1198–200 (collecting cases holding that applying "force unnecessary to any legitimate law enforcement purpose" to "an arrestee [who] has been fully secured" amounts to an unreasonable seizure in violation of the Fourth Amendment); *see also Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) ("An officer's decision to point a gun at an unarmed civilian who objectively poses no threat to the officer or the public can certainly sustain a claim of excessive force.").

Accordingly, Ramsaroop violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure with at least those three contacts. Plaintiff's motion for partial

summary judgment as to Defendant Ramsaroop's liability (Doc. 25) is therefore due to be granted. Plaintiff's claims against Ramsaroop will proceed to trial on the issue of damages.

### IV. The Sheriff's Motion for Summary Judgment

Finally, Defendant Jerry Demings, Sheriff of Orange County, moves for summary judgment on all claims against him in his official capacity, arguing that Plaintiff cannot establish municipal liability for the individual Defendant's purported constitutional violations. (*See* Doc. 39, p. 12 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1976)).) Plaintiff does not oppose. (Doc. 48.) Accordingly, the motion is due to be granted and, there being no just reason for delay, the Court will direct the Clerk to enter judgment in the Sheriff's favor. *See* Fed. R. Civ. P. 54(b). The Sheriff's motion to disqualify Plaintiff's expert witness (Doc. 40) is therefore due to be denied as moot.

### CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion for Summary Judgment as to Defendant Courdney Ramsaroop (Doc. 25)—which the Court construes as a motion for partial summary judgment on the issue of Ramsaroop's liability on the excessive force claim brought against him (*see* Doc. 1, ¶¶ 13–17; Doc. 25, pp. 4–9)— is **GRANTED**. Plaintiff's excessive force claim against Defendant Ramsaroop shall proceed to trial on the issue of damages.

2. Plaintiff's Motion for Summary Judgment as to Defendant Hector Avilez (Doc. 26) is **DENIED**.

3. Defendant Hector Avilez's Motion for Summary Judgment (Doc. 38) is

**DENIED**.

4. Defendant, Sheriff Jerry L. Demings' Motion for Summary Judgment and Memorandum of Law in Support (Doc. 39) is **GRANTED**.

5. Motion to Exclude Report and Testimony of Charles Drago and Incorporated Memorandum of Law (Doc. 40) is **DENIED AS MOOT**.

6. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Jerry Demings, Sheriff of Orange County, Florida, and against Plaintiff.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 12, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

*Pro Se* Party